IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH DUFFIN *ET AL.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EXELON CORPORATION *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MARTIN DEVINE *ET AL.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action Nos.: 06 C 1382 |
| | ) | 06 C 2383 |
| v. | ) | 06 C 2384 |
| | ) | |
| COMMONWEALTH EDISON COMPANY *ET AL.*, | ) | Suzanne B. Conlon, Judge |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MICHAEL D. SHECK *ET AL.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH EDISON COMPANY *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Three groups of homeowners from Grundy and Will Counties, Illinois[1] sued Commonwealth Edison Company, Exelon Generation Company, LLC (d/b/a Exelon Nuclear), and Exelon Corporation, for alleged tritium spills from a nuclear power plant owned and operated by defendants. Plaintiffs alleged that since 1996, six million gallons of tritiated water spilled from the plant and damaged their properties. They sought monetary damages and injunctive relief for negligence, nuisance, strict liability, and trespass.[2] Their claims survived defendants' motions to dismiss. *Duffin v. Exelon Corp.*, No. 06 C 1382, 2006 WL 1710597, at *3 (N.D. Ill. June 16, 2006) (Conlon, J.); *Devine*, 2006 WL 2038593, at *4. Defendants now move for determination of duty owed in each case. The motions raise identical issues in all three cases and are therefore consolidated for consideration. For the reasons set forth below, the motions are denied.

---

[1] The first group consists of named putative class members in *Duffin v. Exelon Corp.*, No. 06 C 1382: Kenneth Duffin, Teresa Duffin, Paul Orloff, Joann Orloff, David Derbas, and Patsy Derbas.

The second group consists of plaintiffs in *Devine v. Commonwealth Edison Co.*, No. 06 C 2383: Martin Devine, Susan Devine, Jay Faletti, Steven Flynn, Walter Hess, Alycia Hess, Bernadine Hess, Robert Jones, Three B Investors, Kenneth Kapke, Susan Kapke, James Mikel, Sr., Doris Mikel, Philip Milburn, Susan Ourado, Robert Scamen, Nancy Scamen, Mary Williams, Kenneth Banderman, and Charles E. Wren.

The third group consists of plaintiffs in *Sheck v. Commonwealth Edison Co.*, No. 06 C 2384: Michael D. Sheck, Wendy Sheck, James Annis, Christine Annis, Dwayne Bawcum, Vincent Desalvo, Judith Desalvo, Harold Gonis, Kathleen Gonis, Lowell Lide, Gerry Sikic, Vivian Fisher, Thomas Zimmer, Judith Zimmer, and John Zubik.

[2] In addition, the *Devine* and *Sheck* plaintiffs brought state statutory claims. But these claims were dismissed. *Devine v. Commonwealth Edison Co.*, Nos. 06 C 2383, 06 C 2384, 2006 WL 2038593, at *4 (N.D. Ill. July 19, 2006) (Conlon, J.).

## BACKGROUND

These three cases arise from alleged tritium spills from the Braidwood Generating Station, located in Braceville, Will County, Illinois. Am. Compls. at ¶¶ 8, 18.[3] An underground pipe, known as the "blowdown line," stretches from the plant to the nearby Kankakee River. *Id.* at ¶ 17. The blowdown line runs approximately four and one half miles long and adjacent to private and public properties. *Id.* Eleven vacuum breakers are placed along the blowdown line to prevent formation of vacuum inside the pipe. *Id.* at ¶ 21. Through the blowdown line, the plant is authorized to discharge tritiated water into the Kankakee River. *Id.* at ¶ 19. The plant is not authorized, however, to release tritiated water to nearby properties because human exposure to tritium may cause cancer. *See id.* at ¶¶ 11-13.

On at least 22 occasions since 1996, millions of gallons of tritiated water were allegedly spilled along the blowdown line, contaminating nearby properties. *Id.* at ¶¶ 23, 30, 32. According to plaintiffs, malfunctioning vacuum breakers caused these spills. *Id.* at ¶ 18. Through air and groundwater, the spills allegedly emitted radioactive particles onto plaintiffs' properties. *E.g., id.* at ¶¶ 51-53, 66.

According to plaintiffs, the emissions of radioactive particles not only caused property damage and interfered with their rights of use and enjoyment, but also attached a stigma to their properties. *Id.* at ¶¶ 48, 53, 68. In addition, plaintiffs allegedly incurred costs in cleaning up the

---

[3] The background facts are derived from the *Duffin* complaint and the amended complaints in *Devine* and *Sheck*, which contain similar allegations. *Compare* Am. Compl., *Devine*, Dkt. No. 27 (May 30, 2006); Am. Compl., *Sheck*, Dkt. No. 23 (June 1, 2006) *with* Compl., *Duffin*, Dkt. No. 1 (Mar. 13, 2006). For the sake of brevity, the background facts refer only to the amended complaints in *Devine* and *Sheck*.

contamination. *E.g., id.* at ¶¶ 54, 59. As a result, they sued for monetary damages and injunctive relief, including establishment of remedial plans for their properties. *Id.* at ¶¶ 58-59, 69.

In response, defendants moved to dismiss, arguing, among other things, that 10 C.F.R. § 20.1301 "define[s] the duty of care in a public liability action." *E.g.*, Defs. Mem. for Mot. to Dismiss, *Duffin*, Dkt. No. 37 at 6 (May 10, 2006). They argued plaintiffs failed to allege the tritium level on their properties exceeded the "[d]ose limits for individual members of the public" prescribed in § 20.1301. *Id.* at 7. Their motions were denied because, to survive a motion to dismiss, the complaints "need not identify the specific regulations underlying the alleged violations," and because the issue of the standard of care could not "be resolved at the pleading stage." *Devine*, 2006 WL 2038593, at *2.

Defendants now move for determination of duty owed, rehashing the same arguments on the duty of care. They argue the motions are ripe for determination, and that an early determination on their duty of care would facilitate discovery. They further argue that 10 C.F.R. § 20.1301 constitutes the sole federal regulation defining their duty of care, and that other regulations are inadequate.

## DISCUSSION

### I. Early Determination

Moving for determination of their duty of care, defendants seek to invoke the court's power under Fed. R. Civ. P. 16 to control the course of litigation. *See G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 652 (7th Cir. 1989) (Rule 16 allows district courts "to manage actively their dockets from an early stage"). They argue that determination of their duty at this stage would prevent wasteful discovery. But as discussed below, their argument lacks sufficient legal and factual basis.

4

## A. Legal Basis

Arguing their motions are ripe for determination, defendants rely on three distinguishable district court decisions: *O'Conner v. Commonwealth Edison Co.*, 748 F. Supp. 672 (C.D. Ill. 1990) (Mihm, J.); *Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 14 (D. Mass. 1995) (Stearns, J.) (citing *O'Conner*); and *Finestone v. Florida Power & Light Co.*, 319 F. Supp. 2d 1347, 1348 (S.D. Fla. 2004) (same). These decisions do not explain why an early determination on duty of care is appropriate. *See, e.g., id.* (citing *O'Conner* and stating, without analysis, that "ruling on this issue early in the litigation is . . . appropriate"). Nor do they address property damage claims. *See O'Conner*, 748 F. Supp. at 673 (plaintiff allegedly suffered from cataracts); *Whiting*, 891 F. Supp. at 13 (lymphocytic leukemia); *Finestone*, 319 F. Supp. 2d at 1347 (cancer). As a result, the duty of care analysis in these decisions implicates relatively few federal regulations, and do not require detailed inquiry into the underlying facts or regulations. *See id.* at 1348-50 (discussing only three sets of regulations). Because plaintiffs here present only property damage claims, *O'Conner*, *Whiting*, and *Finestone* are distinguishable.

Defendants cite no authority requiring determination of their duty before discovery. In fact, their substantive arguments rely primarily on authorities that were decided after discovery was taken. *See, e.g., O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1093 (7th Cir. 1994) (ruling on summary judgment); *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 802 (N.D. Ill. 1999) (Gettleman, J.) ("the parties conducted extensive discovery, lasting over six months"). Absent controlling authority, their substantive arguments warrant consideration at this stage only if they demonstrate benefits would result from an early determination. But as discussed below, they have failed to do so.

5

## B. Factual Basis

Defendants fail to identify any concrete benefits resulting from an early determination of their duty. They allege "[e]xpensive and time-consuming discovery . . . [would] not illuminate the duty owed issue," and that an early determination of their duty would prevent discovery from "run[ning] the gamut of almost anything to do with the [plant] over the past decade." Defs. Consol. Mem. at 4. They speculate that an early determination would aid the court in determining *Duffin*'s class certification. *Id.* at 5 n.3. Their conclusory allegations of abstract, speculative benefits amount only to a recitation of the policy against abusive discovery, articulated in Fed. R. Civ. P. 26 through 37, as well as the Local Rules and this court's standing order.

These rules aim to curb the discovery abuses defendants purportedly seek to prevent. For example, Fed. R. Civ. P. 31(a)(2) allows only ten depositions upon written questions as a matter of course; the court's standing order limits interrogatories to twenty-five without leave of court. Case Management Procedures, *available at* http://www.ilnd.uscourts.gov/JUDGE/CONLON/sbcpage.htm. Under these rules, the court has wide latitude in limiting the time and manner of discovery, and in fashioning protective orders. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("judges should not hesitate to exercise appropriate control over the discovery process"). The court may "even bar discovery altogether on certain subjects, as required 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998) (quoting Fed. R. Civ. P. 26(c)). Here, the court has already set a schedule to ensure orderly discovery in all three cases. *See, e.g.*, Minute Order, *Duffin*, Dkt. No. 54 (July 6, 2006). Absent a factual basis requiring additional protection against potential abuse, the court should not prematurely determine defendants' duty just to afford them the discovery safeguards already in place.

6

*See Cook Inc. v. C.R. Bard, Inc.*, No. IP 00-1791-C, 2003 WL 23009047, at *1 (S.D. Ind. Sept. 18, 2003) (Barker, J.) (refusing to issue a protective order because "the sanctions provisions available under the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 generally are sufficient to prevent ... discovery abuses"). Accordingly, the court must deny defendants' motions for determination of duty at this stage.

## II. Substantive Arguments

A review of defendants' substantive arguments further supports the conclusion that their motions are premature. Arguing that 10 C.F.R. § 20.1301 constitutes the sole duty of care, they primarily rely on authorities involving personal injury claims. *See, e.g., O'Conner*, 13 F.3d at 1093 (cataracts); *Hand v. Cargill Fertilizer, Inc.*, No. 05-12353, 157 Fed. Appx. 230, 232 (11th Cir. Dec. 6, 2005) (leukemia). As its title indicates, § 20.1301 provides "[d]ose limits for individual members of the public"; thus, its applicability to personal injury cases is apparent. 10 C.F.R. § 20.1301. Whether § 20.1301 constitutes the sole duty of care, however, is uncertain because other federal regulations, such as 10 C.F.R. Part 20's "as low as is reasonably achievable" standards, may be applicable. *See McCafferty v. Centerior Serv. Co.*, 983 F. Supp. 715, 719-20 (N.D. Ohio 1997) (Nugent, J.) (applying §§ 20.1101 and 20.1201 to a personal injury claim). Section 20.1301's applicability here is further complicated by the fact that plaintiffs allege only property damage.

Defendants cite two non-binding decisions, *Carey* and *Osarczuk v. Associated Universities, Inc.*, which applied § 20.1301 to property damage claims. *Carey* granted defendants summary judgment on the property damage claims because plaintiffs proffered no "evidence to suggest that any emissions were over the allowable [federal] limits," *Carey*, 60 F. Supp. 2d at 811; *Osarczuk* dismissed property damage claims because plaintiffs' "expert [did] not dispute that the [radiation]

7

levels [were below] federal limits," No. 96-2836, slip op. at 6-7, n.8 (N.Y. Sup. Ct. Mar. 10, 2005) (citing *Carey*). Both *Carey* and *Osarczuk* proceeded through "extensive discovery." *Id.* at 5; *Carey*, 60 F. Supp. 2d at 802. In contrast, this record contains neither facts nor evidence beyond the bare pleadings. There is no adequate basis for determining defendants' duty of care. *Carey* and *Osarczuk* therefore cannot guide the court at this stage.

Defendants fail to provide a legal basis for the court to determine, before discovery, that 10 C.F.R. § 20.1301 constitutes their sole duty of care. Their motions must therefore be denied. Accordingly, the court need not address the parties' arguments on the applicability of other regulations.

## CONCLUSION

For the reasons set forth above, the motions for determination of duty owed in *Duffin*, *Devine*, and *Sheck* are denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

September 5, 2006