IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH DUFFIN, TERESA DUFFIN, )
PAUL ORLOFF, JOANN ORLOFF, VICTOR )
RODRIGUEZ, BARBARA RODRIGUEZ, )
individually and on behalf of all others )
similarly situated, )
)
        Plaintiffs, ) Civil Action No.: 06 C 1382
)
v. ) Suzanne B. Conlon, Judge
)
EXELON CORPORATION, )
COMMONWEALTH EDISON COMPANY, )
and EXELON GENERATION COMPANY, )
LLC, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Kenneth and Teresa Duffin, Paul and Joann Orloff, and Victor and Barbara Rodriguez brought this putative class action against the Exelon Corporation, owner of the Braidwood nuclear power plant, and its subsidiaries, Exelon Generation Company, LLC and Commonwealth Edison Company (collectively, "Exelon"). Plaintiffs allege Exelon committed negligence, public and private nuisance, trespass, and fraud by releasing water containing hazardous tritium into communities surrounding the plant. The court denied Exelon's motion to dismiss. *Duffin v. Exelon Corp.*, No. 06 C 1382, 2006 WL 1710597, at *3 (N.D. Ill. June 16, 2006) (Conlon, J.). Plaintiffs now move for class certification. For the reasons set forth below, the motion is denied.

## BACKGROUND

Exelon operates the Braidwood Generating Station, a nuclear power plant located approximately 60 miles southwest of Chicago. Am. Compl. at ¶¶ 2, 16. Within five miles of the

plant are three towns – Braidwood, Godley, and Braceville – with a combined population of approximately 6,500. *Id.* at ¶ 17; Opp'n at Ex. 2. Exelon is authorized to discharge water containing tritium, a radioactive isotope, into the nearby Kankakee River where it is diluted. *Id.* at ¶¶ 18, 50. The tritiated water runs to the river through an underground pipe known as the "blowdown line." *Id.* at ¶ 18. Exelon is not authorized to otherwise release tritiated water because tritium poses a health threat in large doses. *Id.* at ¶¶ 54, 59.

According to the complaint, six million gallons of tritiated water were spilled along the blowdown line from 1996 to 2000. *Id.* at ¶¶ 2, 26, 28. The spills occurred primarily on Exelon land. *Id.* at ¶¶ 2, 26. Through evaporation and soil seepage, tritium entered the surrounding communities' air and groundwater. *Id.* Specifically, the spills caused a groundwater "plume" containing elevated tritium levels. *Id.* at ¶ 26. The plume extends outside Exelon's property. *Id.* Pools of standing tritiated water evaporated, causing tritium to enter the air. *Id.* Plaintiffs allege the air and groundwater are contaminated for miles surrounding the plant. *Id.* at ¶¶ 3, 26, 33, 34, 60. They contend tritium contamination has disrupted the use and enjoyment of their property and caused an "economic stigma" lowering their property values. *Id.* at ¶¶ 64, 65. Plaintiffs seek class certification for claims of negligence, public and private nuisance, trespass, and fraud. *Id.* at ¶¶ 79, 87-147.

## DISCUSSION

### I. Legal Standards

The court has broad discretion whether to grant class certification. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). Certification is appropriate if plaintiffs demonstrate the proposed class satisfies all four requirements of Fed. R. Civ. P. 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one condition of Rule 23(b). *Oshana v. Coca-Cola Co.*, 472 F.3d

506, 513 (7th Cir. 2006); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The court must not consider the case's merits. *Allen v. Chicago Transit Auth.*, No. 99 C 7614, 2000 WL 1207408, at *5 (N.D. Ill. July 31, 2000) (Conlon, J.) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)). However, the court may "prob[e] behind the pleadings" to determine if the proposed class members' interests are fairly encompassed within the named plaintiffs' claims. *Id.* (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)); *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001). The court does not "talismanically accept" plaintiffs' factual allegations as true when determining certification. *Hyderi v. Washington Mut. Bank*, 235 F.R.D. 390, 395 (N.D. Ill. 2006) (Filip, J.). A class action should be certified only if the court is satisfied "after a rigorous analysis" that Rule 23 is met. *Id.* (quoting *Falcon*, 457 U.S. at 161).

## II. Analysis

Plaintiffs propose the following class:

> All present owners of property (not including the Defendants) located within the towns or villages of Godley, Braidwood, and Wilmington or unincorporated areas surrounding those towns, and located within the boundaries of I-55 on the west; West Coal City Road on the north; the southern tip of the Exelon cooling pond or McGuire Road on the south; and the Kankakee River on the east.

Class Memo. at 5.[1] Plaintiffs contend the class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(3). Plaintiffs rely primarily on five mass tort contamination cases where this court granted class

---

[1] Plaintiffs' amended complaint proposed a class much larger in scope: residents and property owners "within a 10-mile radius of the Plant including, but not limited to, Godley, Braidwood, and Wilmington." Am. Compl. at ¶¶ 76, 77. The class certification motion encompasses the towns of Godley, Braidwood, and Braceville, which together contain approximately 6,500 residents and 2,500 properties. Opp'n at Ex. 2.

3

certification. *See Cannata v. Forest Pres. Dist.*, No. 06 C 2196, Slip op. (N.D. Ill. Oct. 11, 2006) (Hibbler, J.); *Muniz v. Rexnord Corp.*, No. 04 C 2405, 2005 WL 1243428 (N.D. Ill. Feb. 10, 2005) (Darrah, J.); *Ludwig v. Pilkington North Am., Inc.*, No. 03 C 1086, 2003 WL 22478842 (N.D. Ill. Nov. 4, 2003) (Zagel, J.); *Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141 (N.D. Ill. Aug. 12, 2002) (Hibbler, J.), *aff'd*, 319 F.3d 910 (7th Cir. 2003); *LeClercq v. Lockformer Co.*, No. 00 C 7164, 2001 WL 199840 (N.D. Ill. Feb. 28, 2001) (Leinenweber, J.). Exelon argues certification is not appropriate because plaintiffs lack standing, the proposed class is overbroad, and Rule 23's requirements are not met. Plaintiffs counter that Exelon's arguments impose an improperly high evidentiary threshold to obtain class certification.

### A.  Standing

Exelon initially contends that class certification is not appropriate because plaintiffs lack standing. Exelon argues that plaintiffs have failed to show an injury commensurate with the class because they live over a mile from the alleged groundwater plume and tritium is not present on their property in detectable levels. Although this appears to be an argument under Rule 23(a), it is addressed separately because it implicates the court's jurisdiction. *See Smith v. Wisconsin Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1142 (7th Cir. 1994) ("[s]tanding and ripeness are jurisdictional prerequisites").

For Article III standing, plaintiffs must allege they sustained "personal injury[-in-fact] fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Johnson v. Allsteel, Inc.*, 259 F.3d 885, 887 (7th Cir. 2001) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (injury-in-fact is concrete, particularized, and actual or imminent harm).

Plaintiffs allege their property was contaminated when Exelon spilled millions of gallons of water containing potentially harmful radioactive chemicals. Am. Compl. at ¶¶ 2-4. According to plaintiffs, the alleged contamination has interfered with the use and enjoyment of their property and diminished their home values. *Id.* at ¶ 4. Plaintiffs further contend they relied on Exelon's misrepresentations regarding the plant's safety and the spills' potential health risks. *Id.* at ¶¶ 139-147. These allegations are adequate to confer Article III standing. *See Family & Children's Ctr., Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1058 n.3 (7th Cir. 1994) (standing inquiry exclusively addresses whether plaintiffs alleged facts satisfying constitutional and prudential limitations; the complaint's merits are not relevant).

Once standing is established by the named plaintiffs, there is no separate class standing requirement "in the constitutional sense." *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, No. MDL-03-1562-GPM, 2007 WL 522300, at *4 (S.D. Ill. Feb. 16, 2007) (Murphy, C.J.); 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 2:5 (4th ed. 2002 & Supp. 2006) (collecting cases). Rather, class standing is satisfied if plaintiffs demonstrate they meet Rule 23(a)'s requirements. *Payton v. County of Kane*, 308 F.3d 673, 681 (7th Cir. 2002); *Irving Trust Co. v. Nationwide Leisure Corp.*, 95 F.R.D. 51, 57 n.6 (S.D.N.Y. 1982) ("Generally, when the Rule 23(a) prerequisites are met, there will be standing, since those prerequisites demand that the plaintiff alleged injury resulting from a class wrong.").

### B. Overbreadth

Exelon argues against class certification because the proposed class is "grossly overbroad." Opp'n at 5. Exelon contends the class definition, which is described strictly in geographic terms, has no relation to actual tritium contamination. According to Exelon, even accepting plaintiffs'

contamination models as true, only three properties outside the plant's boundaries are contaminated by the groundwater plume. None are contaminated by airborne tritium. Exelon contends there is no evidence to support a proposed class encompassing over 2,500 properties and 6,500 residents. Plaintiffs respond that their expert evidence sufficiently demonstrates that all the proposed class members' properties have been contaminated by tritium.

A well-recognized prerequisite to class certification is that the proposed class must be sufficiently definite and identifiable. *Guillory v. American Tobacco Co.*, No. 97 C 8641, 2001 WL 290603, at *2 (N.D. Ill. Mar. 20, 2001) (Guzman, J.) (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)). Overbroad class descriptions violate the definiteness requirement because they "include individuals who are without standing to maintain the action on their own behalf." *Oshana*, 225 F.R.D. at 580. When determining overbreadth, courts inquire whether the class is defined by the defendants' activities. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602 (D. Col. 1990) (citing *Rochford*, 565 F.2d at 978).

The proposed class is plainly overbroad. The class area is defined in geographic terms unrelated to evidence of actual tritium contamination. The boundaries of the class – Interstate 55, West Coal City Road, McGuire Road, and the Kankakee River – create a trapezoid outlining the plant. Class Memo. at Ex. 7; Opp'n at Ex. 5. But the groundwater plume and other locations with appreciably elevated tritium levels are located closely around the Exelon pond and the blowdown line, which are miles from the outer boundaries of the defined class properties. *Id.* Moreover, the groundwater plume constitutes a fraction of the class area. Opp'n at 6, Ex. 3 at ¶ 11 (plume area is less than 2% of class area). Although plaintiffs contend "tritium levels are elevated above background throughout the [class] area," they provide no supporting evidence. Instead, they cite to

the complaint, which refers to tritium levels in the plume or along the blowdown line. Class Memo. at 4; Am. Compl. at ¶ 62. Plaintiffs rely on an expert report by Dr. Paul Rosenfeld, an soil chemistry and air dispersion modeling expert. Reply at Ex. 1, ¶ 1. But the report and attached charts do not identify appreciably elevated tritium levels in locations other than near the plume or the blowdown line. *Id.* at Ex. 1, ¶ 3; App. C. Plaintiffs' reliance on the scope of Exelon's bottled water program is misplaced; providing bottled water is not probative evidence of the geographic scope of contamination. Class Memo. at 3; Opp'n at Ex. 5.

Plaintiffs' airborne contamination evidence is not related to the class area. Even assuming the highest tritium concentration and evaporation rates, the models do not coincide with class boundaries. Sur-reply at Ex. 1 (Rosenfeld Tr. at 44, 178, 185-86), Ex. 3 (concentric circles emanating outward from plant). The models do not justify plaintiffs' proposed class area of over 25 square miles. *Id.* at 4 (approximately 26% of class area is outside 5000 meter outer contamination circle). There is simply no correlation between plaintiffs' evidence concerning the location of contaminated air and groundwater, and the "arbitrarily drawn lines on a map" constituting plaintiffs' proposed class. *See Daigle*, 133 F.R.D. at 602-03 (rejecting geographically described class area where plaintiff failed to "identify any logical reason relating to the defendants' activities").

Plaintiffs argue the proposed class is consistent with other certified property contamination cases employing geographic boundaries. Although plaintiffs do not identify the cases, they rely on five mass tort certification decisions throughout their motion. However, only two of those cases addressed purely geographic classes. *See Cannata*, No. 06 C 2196, at 2-3 (class defined by residents' addresses); *Ludwig*, 2003 WL 22478842, at *1 (class defined by owning property or residing in town of Naplate). In both cases, the proposed classes were smaller in scope and more closely tied to the

7

geographic boundaries. *Id.* (80 home class in *Cannata*; 600 resident class in *Ludwig*); Opp'n at Exs. 10, 11. Further, there was a showing of class-wide contamination in both cases. *Id.* Plaintiffs do not cite authority supporting certification of a geographically-based, 6,500 member class where there is no evidence of area-wide contamination. *See e.g., Mejdreck*, 2002 WL 1838141, at *2 (class defined as those residing in contamination plume whose property had been impacted); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Lit.*, MDL 1358(SAS), 2007 WL 541954, at *1 (S.D.N.Y. Feb. 20, 2007) (class defined as those living in vicinity of contamination whose property was contaminated). Plaintiffs' class definition is overbroad and they have failed to identify a sufficiently definite class. *Guillory*, 2001 WL 290603, at *2.[2]

Plaintiffs invite the court to narrow the class definition to cure its overbreadth. Because class certification is inappropriate under Rule 23, the court declines to redraft the class definition. *See Culver v. City of Milwaukee*, 277 F.3d 908, 912 (7th Cir. 2002) (declining to divide overbroad class into subclasses when Rule 23(a)'s requirements not met); *Oshana*, 225 F.R.D. at 581 (refusing to redraft class description).

### C. Rule 23(a)

#### 1. Numerosity

Rule 23(a) requires the class be so numerous that joinder of its members is impracticable. FED. CIV. P. 23(a)(1). Impracticability does not mean impossibility; plaintiffs need only prove it would be inconvenient and difficult to join the proposed class members. *Bethards v. Bard Access*

---

[2]Plaintiffs "economic stigma" argument fails for the same reason: there is no connection between the proposed class boundaries and evidence of a stigma caused by tritium contamination. Plaintiffs' expert fails to offer any evidence demonstrating how and to what extent the alleged economic stigma warrants the extremely broad class area. Sur-reply at 8-9; Ex. 5 (Kilpatrick Tr. at 21-27, 45, 103-04, 186).

*Sys., Inc.*, No. 94 C 1522, 1995 WL 75356, at *3 (N.D. Ill. Feb. 22, 1995) (Guzman, J.). Although Rule 23(a)(1) contains no threshold requirement, generally 40 or more members are adequate to establish numerosity. *Hyderi*, 235 F.R.D. at 396. Plaintiffs argue numerosity is easily met because thousands of people live within the class area.

Given the overbroad class definition, the court cannot accept plaintiffs' numerosity argument. Plaintiffs have failed to provide evidence that tritium contamination is present throughout the class area. The evidence shows that only three non-Exelon properties touch the largest groundwater plume and none touch the smaller plumes. Opp'n at 6-7, Ex. 4. Less than ten properties are contiguous to the affected properties. *Id.* Only 27 properties within the proposed class area (out of 450 tested) show tritium levels above 200 pCi/l; only four of those show levels above 400 pCi/l. *Id.* at Ex. 3, ¶ 14. Most of the class' property falls well within safe groundwater standards acknowledged by plaintiffs. Am. Compl. at ¶ 23 (EPA regulations indicate 20,000 pCi/l constitutes safe tritium levels in groundwater). It is inappropriate for the court to determine the tritium level that constitutes contamination or the contamination level that constitutes property damage for the purposes of this motion. However, plaintiffs provide no evidence that tritiated groundwater has contaminated properties throughout the proposed class area. The graphs of plaintiffs' expert show appreciably heightened tritium levels only around the plume and along the blowdown line. Reply at Ex. 1, App. C. According to plaintiffs, "dozens" of residents live in those areas. Class Memo. at 7. That rough estimate is speculative and insufficient to fulfill Rule 23(a)(1)'s numerosity requirement. *Hyderi*, 235 F.R.D. at 396.

Plaintiffs' air contamination evidence also fails to support numerosity. The models plaintiffs rely on estimate airborne tritium levels shortly after 1998 and 2000 spills. Reply at Ex. 1, ¶¶ 5-9.

The models do not offer evidence of tritium deposits, which are defined as the "concentration of any tritium that was on the ground or any other surface." Sur-reply at 4, Ex. 1 (Rosenfeld Tr. at 245-46). In other words, plaintiffs provide no evidence that properties within the class area were actually contaminated by airborne tritium. Plaintiffs fail to provide evidence that specific properties were affected by contaminated air. Without class-wide contamination evidence, plaintiffs are left with a speculative class. *Allen*, 2000 WL 1207408, at *7. Conclusory allegations and speculation do not satisfy Rule 23(a)(1). *Id.* Plaintiffs' argument that numerosity will be shown after additional discovery is unavailing. It is plaintiffs' burden to establish the appropriateness of class certification; they have had months to produce evidence supporting their motion. *Retired Chicago Police Ass'n*, 7 F.3d at 596.

### 2. Commonality and Typicality

The "key question" in determining commonality is whether there is at least one core issue of "law or fact common to the class." FED. R. CIV. P. 23(a)(2); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Put another way, "[a] common nucleus of operative facts" is usually enough to satisfy the requirement. *Keele*, 149 F.3d at 594. Exelon does not contest commonality. Plaintiffs identify at least six issues common to the class, including whether Exelon violated federal and state regulations by spilling tritiated water. The commonality requirement is satisfied. *Rosario*, 963 F.2d at 1018; *Oshana*, 225 F.R.D. at 581.

Plaintiffs' claims are typical of the class if they arise from the same event, practice, or course of conduct giving rise to class members' claims, and the claims are based on the same legal theory. FED. R. CIV. P. 23(a)(3); *Oshana*, 472 F.3d at 514. Typicality is focused on the characteristics of the named plaintiffs relative to the class. *Hill v. Gateway 2000, Inc.*, No. 96 C 4086, 1996 WL 650631,

at *4 (N.D. Ill. Nov. 7, 1996) (Conlon, J.). Plaintiffs contend typicality is met because Exelon's conduct is central to all proposed class members' claims. Plaintiffs argue that "like the other prospective class members, [they] live in the area contaminated or stigmatized by Exelon's unauthorized releases of tritium." Class Memo. at 8. Exelon disputes typicality because the named plaintiffs' properties are outside the groundwater plume and there is no evidence of contamination.

Although the overbroad class definition muddies the issue, plaintiffs have demonstrated typicality. The central event in all the proposed class members' claims is Exelon's unauthorized release of tritiated water. There is no dispute the tritium spills occurred. Answer at ¶ 2. The class members' factual and legal theories are based on tritium contamination emanating from those spills. Am. Compl. at ¶¶ 87-147. Exelon is correct that significant factual variations exist between class members. Tritium levels vary drastically between properties inside and those outside the plume. In fact, according to plaintiffs' evidence, many properties have little or no contamination at all. But factual inconsistencies between the class are not enough not defeat typicality. *Rosario*, 963 F.2d at 1018; *Ludwig*, 2003 WL 22478842, at *3 (typicality met where class members' complaints arose from defendants alleged improper disposal of arsenic, even though differing levels and sources of contamination). Accordingly, Rule 23(a)(3)'s requirements are met.

### 3. Adequacy of Representation

Rule 23(a) requires the named plaintiffs to fairly and adequately represent the proposed class' interests. FED. R. CIV. P. 23(a)(4); *Retired Chicago Police Ass'n*, 7 F.3d at 598. The adequacy determination has two elements: (1) plaintiffs' attorney must be qualified, experienced, and able to conduct the litigation; and (2) the named plaintiffs' interests must not be antagonistic to the class members' interests. *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1982); *Oshana*,

225 F.R.D. at 582. Plaintiffs contend they meet both elements because they retained experienced class counsel and they assert claims identical to the class.

Exelon does not dispute the adequacy of class counsel. The court finds no reason to question the ability of plaintiffs' counsel to conduct this litigation. Rule 23(a)(4)'s competency requirement is met. *Hyderi*, 235 F.R.D. at 396.

Exelon does dispute that plaintiffs can adequately represent the class. Exelon argues plaintiffs are inadequate because their properties are located outside the plume and are uncontaminated. The level of plaintiffs' property contamination factually differentiates them from class members living in or near the plume. The same is true for the majority of the proposed class. But that does not render plaintiffs unable or unlikely to fully represent the class' interests. *Oshana*, 225 F.R.D. at 582; *Mejdreck*, 2002 WL 1838141, at *5. The entire class, including the named plaintiffs, asserts the same legal theories based on the same general nucleus of operative facts. Am. Compl. at ¶¶ 87-147. There is no indication plaintiffs are antagonistic to the class or will face defenses inapplicable to other class members. *Oshana*, 225 F.R.D. at 582 (antagonistic interests defeat adequacy); *Allen*, 2000 WL 1207408, at *11 (adequacy compromised if named plaintiffs face defenses inapplicable to the proposed class). Under these circumstances, Rule 23(a)(4) is met.

### D. Rule 23(b)

Because plaintiffs fail to meet all Rule 23(a)'s requirements, their class certification motion fails. *See Retired Chicago Police*, 7 F.3d at 596 (all Rule 23(a) elements must be met before court certifies class). Even if plaintiffs could meet all of Rule 23(a)'s requirements, the motion still fails because they cannot satisfy Rule 23(b). Plaintiffs contend the proposed class is maintainable under Rule 23(b)(3), which requires: (1) that "questions of law or fact common to members of the class

predominate over any questions affecting only individual members;" and (2) the "class action is superior to other available methods for resolving the controversy." FED. R. CIV. P. 23(b)(3); *Hyderi*, 235 F.R.D. at 398. Predominance concerns whether the named plaintiffs can offer proof on a class-wide basis through their individualized claims. *Id.* This requirement is distinct from Rule 23(a)(2)'s commonality element and "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). Superiority is established when a class action would achieve "economies of time, effort, and expense," and promote uniformity of decisions without sacrificing procedural fairness. *Id.* at 615.

Rule 23(b)'s superiority element cannot be met given the court's numerosity determination. *See* sec. II(C)(1), *supra*. The evidence plaintiffs present indicates the only properties with appreciably elevated tritium levels are near the plume or along the breakdown line. Only three private properties touch the plume; just a handful more are contiguous to those properties. Class Memo. at 7; Opp'n at Ex. 4. At most, plaintiffs have shown a few dozen property owners are affected by possible tritium contamination. A class action is not necessary to address the claims of so few. *Hyderi*, 235 F.R.D. at 396 (generally, 40 or more plaintiffs required to certify a class). Judicial economy and efficient litigation management would not be maximized by certifying a limited class, especially considering the onerous class action notice requirements. *See* FED. R. CIV. P. 23(c)(1)(B) (requiring detailed notice to all class members).

Even assuming superiority, plaintiffs have not shown common questions of the class predominate over questions affecting individual members. Plaintiffs support their predominance argument by analogizing this case to recent contamination cases in this court. *See Cannata*, No. 06 C 2196, Slip op.; *Muniz*, 2005 WL 1243428; *Ludwig*, 2003 WL 22478842; *Mejdreck*, 2002 WL

13

1838141; *LeClercq*, 2001 WL 199840). As explained above, those cases are factually distinguishable. None address an overbroad class where no evidence is offered establishing class-wide contamination. Plaintiffs' evidence shows substantial factual differences between class members whose properties touch the plume and those that do not. Significant trial time would be devoted to determining separate issues of liability regarding individual properties. *Diagle*, 133 F.R.D. at 604. While this concern did not mandate rejecting plaintiffs' typicality argument, the predominance element is more demanding. *Amchem*, 521 U.S. at 623-24. Accordingly, plaintiffs fail to demonstrate a class action is maintainable under Rule 23(b).

## CONCLUSION

Plaintiffs have not met their burden proving a class action is appropriate. The class definition is overbroad and indefinite, and the requirements of Rule 23 are not met. The motion for class certification must therefore be denied.

ENTER:

*Suzanne B. Conlon*

Suzanne B. Conlon
United States District Judge

March 19, 2007