IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH DUFFIN, TERESA DUFFIN, )
PAUL ORLOFF, JOANN ORLOFF, VICTOR )
RODRIGUEZ, BARBARA RODRIGUEZ, )
Individually and on behalf of all others )
similarly situated, )
)
                              Plaintiffs, )   Civil Action No.: 06 C 1382
)
v. )   Suzanne B. Conlon, Judge
)
EXELON CORPORATION, )
COMMONWEALTH EDISON COMPANY, )
and EXELON GENERATION COMPANY, )
LLC, )
)
                              Defendants. )

**MEMORANDUM OPINION AND ORDER**

Kenneth and Teresa Duffin, Paul and Joann Orloff, and Victor and Barbara Rodriguez sue Exelon Corporation and its subsidiaries, Exelon Generation Company, LLC and Commonwealth Edison Company (collectively, "Exelon"), for negligence, strict liability, public and private nuisance, trespass, fraud, and punitive damages. Plaintiffs allege their properties were contaminated when Exelon released water containing hazardous tritium from its Braidwood nuclear power plant. Plaintiffs move for reconsideration of the order denying class certification. *Duffin v. Exelon Corp.*, No. CIV A 06 C 1382, 2007 WL 845336, at *1 (N.D. Ill. Mar. 19, 2007) (Conlon, J.). Alternatively, they seek leave to file a new class certification motion. For the reasons set forth below, the motion is denied.

## BACKGROUND

The facts are drawn from the second amended complaint. Sec. Am. Compl., Dkt. No. 166 (Mar. 15, 2007). Exelon, one of the nation's largest utilities, operates the Braidwood Generating Station, a nuclear power plant located approximately 60 miles southwest of Chicago. The towns of Braidwood, Godley, and Braceville are located within five miles of the plant and have a combined population of approximately 6,500. Exelon is authorized to discharge water containing tritium, a radioactive isotope, into the Kankakee river. Discharge occurs through an underground pipe called the "blowdown line," which runs from the plant to the river. Between 1996 and 2000, Exelon spilled millions of gallons of tritiated water from leaks along the blowdown line. Although the spills occurred primarily on Exelon land, plaintiffs allege a "plume" of tritiated groundwater extends outside Exelon's property and has contaminated the surrounding property owners' air and drinking water. According to plaintiffs, Exelon misrepresented the spills' extent and potential danger. Plaintiffs allege disruption of the use and enjoyment of their property and lowered home values resulting from the "economic stigma" of tritium contamination.

In March 2007, plaintiffs moved for certification of the following class:

> All present owners of property (not including the Defendants) located within the towns or villages of Godley, Braidwood, and Wilmington or unincorporated areas surrounding those towns, and located within the boundaries of I-55 on the west; West Coal City Road on the north; the southern tip of the Exelon cooling pond or McGuire Road on the south; and the Kankakee River on the east.

*Duffin*, 2007 WL 845336, at *2. The court denied certification because the proposed class was "plainly overbroad." *Id.* at *3. It was defined in geographic terms unrelated to actual tritium contamination. *Id.* Plaintiffs' evidence showed appreciably elevated tritium levels only along the

blowdown line and near the plume, which were primarily on Exelon land. *Id.* There was no probative evidence of class-wide contamination justifying a 25 square mile class encompassing over 2,500 properties and 6,500 residents. *Id.* at *3-4. Additionally, plaintiffs failed to satisfy Fed. R. Civ. P. 23(a) and (b): the numerosity requirement was not satisfied because plaintiffs demonstrated only a few dozen residents lived on "contaminated" properties, *id.* at *5; the superiority of a class action was not shown because certifying a limited class would not maximize judicial economy or litigation efficiencies, *id.* at *7; and there was no predominance of class issues because substantial factual differences existed among class members depending on their proximity to the plume, *id.* Given the deficient evidence presented by plaintiffs, the court declined an invitation to redraft the class definition. *Id.* at *4.

## DISCUSSION

Plaintiffs move for reconsideration under Fed R. Civ. P. 59(e). Rule 59(e) applies only to motions seeking relief from final judgments or orders. *Herman v. Central States Southeast & Southwest Areas Pension Fund*, No. 03 C 1010, 2003 WL 22012212, at *1 (N.D. Ill. Aug. 22, 2003) (Conlon, J.). Rule 54(b) is more appropriately invoked; it provides that interlocutory orders are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *See also Quintana v. Harris*, 663 F.2d 78, 80 (10th Cir. 1981). The court also has inherent authority to reconsider interlocutory orders before entering final judgment. *Wimberly v. General Motors Corp.*, No. 95 C 1318, 1997 WL 30960, at *1 (N.D. Ill. Jan. 17, 1997) (Norgle, J.).

Motions to reconsider serve the limited function of either correcting manifest errors of law or presenting newly-discovered evidence. *Jolly Group, Inc. v. Medline Indus., Inc.*, No. 03 C 9390,

2004 WL 1276722, at *3 (N.D. Ill. 2004) (Conlon, J.), *aff'd*, 435 F.3d 717 (7th Cir. 2006). They cannot be used to "rehash" previously denied arguments, *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (Shadur, J.), or introduce new evidence or legal theories that could have been presented earlier, *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). Given their limited purpose, courts rarely grant reconsideration motions. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

I. **New Evidence Claims**

A. **Background Tritium Levels**

Plaintiffs argue the court should reconsider its class certification denial because new evidence shows "more than 200 residents near the plant suffered contamination." Recons. Memo. at 9. Plaintiffs contend the background tritium level in the area surrounding the plant is 50 pCi/L, and Exelon's own testing identifies 184 properties with higher tritium levels. Plaintiffs argue the proposed class is not overbroad and easily meets Rule 23(a)'s numerosity requirement. They assert the court blindly accepted Exelon's "faulty premise" that the background tritium level was 200 pCi/L, resulting in an incorrect finding that only a few properties were contaminated. *Id.*

Plaintiffs' argument fails for a number of reasons. None of the evidence plaintiffs offer is "new," *i.e.*, could not be discovered with reasonable diligence prior to the court's opinion. *Caisse Nationale*, 90 F.3d at 1269. Background tritium levels are a matter of public record or determinable through testing. Def. Opp'n at 5 n.2, Dkt. No. 121 (Jan. 22, 2007) (citing publicly-available report). Nothing prevented plaintiffs from conducting research or testing potential class members' water to establish background levels during the nine months of discovery. Indeed, plaintiffs attempted to do just that; their own expert opined on background tritium levels in his February 28, 2007 deposition.

4

Recons. Opp'n at Ex. H (exhibit to Rosenfeld deposition, stating that "background concentration of tritium in water ranges from 50-200 pCi/L"). Although plaintiffs point to a series of Exelon emails questioning the background levels, those emails were available and identified in a deposition conducted prior to the court's opinion. Recons. Memo. at 4, 9-10.

Similarly, the list of 184 residences with tritium levels above 50 pCi/L was produced by Exelon three months before the class certification decision. Recons. Opp'n at Ex. 9 (Exelon affidavit showing tritium test results produced to plaintiffs on December 8, 2006). In fact, plaintiffs attempted to introduce a form of the list in an unauthorized supplemental memorandum on March 12, 2007, a week prior to the court's decision. Pls. Supp. Memo. at 3, Dkt. No. 141 (Mar. 12, 2007). They made no claim the evidence was new at that time. *Id.*

The only arguably new evidence is the re-test of the Alderson property. Recons. Memo. at 10, Ex. 21 (showing tritium levels near 300 pCi/L). But the Alderson property was one of three within the plume, a location the parties agree has elevated tritium levels. Def. Opp'n at Ex. 4. The court took the Alderson property into account when it found the proposed class was overbroad and not sufficiently numerous to justify certification. *Duffin*, 2007 WL 845336, at *3-5. Plaintiffs provide no truly new evidence to support their reconsideration motion. At best, they demonstrate an ongoing dispute with Exelon regarding background tritium levels and property contamination. *See Quaker*, 123 F.R.D. at 288 (reconsideration motions cannot be used to "rehash" factual or legal arguments).

More fundamentally, plaintiffs misconstrue the basis for the court's denial of class certification. Denial was not premised on background tritium or contamination levels; the court expressly refused to address the case's merits. *Duffin*, 2007 WL 845336, at *5; *see also Eisen v.*

*Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Certification was denied primarily because plaintiffs failed to provide evidence justifying a 2,500-property, 25 square mile proposed class defined purely in geographic terms. *Id.* Plaintiffs' reconsideration motion offers nothing to cure that defect. There is still no indication where "contaminated" properties are located within the class' boundaries, other than near the plume or along the blowdown line. Even assuming 200 properties contain tritium levels above 50 pCi/L, class certification is not warranted because a significant number of non-affected properties would fall within the proposed class. Plaintiffs fail to show how the vastly over-expansive class definition is sufficiently definite and identifiable. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

Plaintiffs' reliance on *Mejdreck v. Met-Coil Systems, Corp.*, 319 F.3d 910 (7th Cir. 2003), is unavailing. As explained in the court's prior opinion, the *Mejdreck* class was not defined in purely geographic terms. *Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141, at *2 (N.D. Ill. Aug. 12, 2002) (Hibbler, J.) (class defined as those residing within the contamination plume whose property had been impacted).

### B.  Fraud and Punitive Damages Allegations

Plaintiffs argue the court's class certification denial should be reconsidered because there is new evidence of fraud supporting a punitive damages claim. The complaint was amended days before the court issued its opinion to include new allegations. Sec. Am. Compl. at ¶¶ 29-53, Exs. 1-13. According to plaintiffs, the new allegations provide an independent basis to certify the class.

Plaintiffs' argument fails for the same reasons explained above: there is nothing new about the additional claims. Plaintiffs have consistently alleged Exelon committed fraud. Compl. at ¶¶ 2-4, Dkt. No. 1 (Mar. 13, 2006); Am. Compl. at ¶¶ 139-47, Dkt. No. 71-74 (Sept. 29, 2006). The

court took the fraud allegations into account when it denied class certification. *Duffin*, 2007 WL 845336, at *1-2 (determining fraud allegations conferred standing). The punitive damages claims were first raised in the second amended complaint, filed prior to the court's opinion. Plaintiffs cited those claims in a supplemental memorandum, also filed prior to the court's opinion, to "provide additional support for class certification." Pls. Supp. Memo. at 4-5. Although the court struck the supplemental memorandum in part, it reviewed its contents in full. Minute Order, Dkt. No. 151 (Mar. 16, 2007). Plaintiffs raise the identical legal theories here as they did in the supplemental memorandum. *Compare* Pls. Supp. Memo. at 4-5 *with* Recons. Memo. at 5-6, 11-13.

Nor are any new material facts alleged. The punitive damages claims are based primarily on emails and deposition testimony elicited prior to the court's certification opinion. *Id.* While there may be some additional support for plaintiffs' claims recently discovered, the substance of the allegations has not appreciably changed. Plaintiffs' "new" evidence is nothing more than retooled factual allegations the court previously rejected. *See Oshana v. Coca-Cola Co.*, No. 04 C 3596, 2005 WL 670522, at *2 (N.D. Ill. Mar. 16, 2005) (Conlon, J.) (motion to reconsider rejected when it inappropriately sought to rehash old arguments by challenging the reasoning of the court's order).

Even if the court accepts plaintiffs' "new" facts and legal theories, there is no basis for reconsideration. Plaintiffs contend the fraud and punitive damages claims provide "another common issue supporting class certification." Recons. Memo. at 11. But the court already found Rule 23(a)'s commonality element was met because a common nucleus of operative facts exists regarding whether Exelon defrauded plaintiffs. *Duffin*, 2007 WL 845336, at *5; Pls. Class Memo. at 7, Dkt. No. 93 (Dec. 22, 2006). However, that was not enough to grant class certification; plaintiffs could not satisfy the necessary elements of Rule 23. *Id.* at *4-7. An additional common factual issue does

7

not compel reconsideration of the court's ruling.

Further, the principle reason the court denied class certification was because the class definition was impermissibly overbroad. *Id.* at *4. Additional fraud-based punitive damages claims does not alter that finding. Simply put, plaintiffs present insufficient evidence of class-wide fraud to justify a 6,500-member class. The argument for "issue certification" is therefore rejected. The authority plaintiffs rely on is inapposite. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 658 (7th Cir. 2004) (court addressed issue of procedures and criteria for converting a settlement class of 17 million into a litigation class).

## II.  New Motion for Class Certification

Plaintiffs alternatively seek leave to file a new motion for class certification with an amended class definition. They propose a two-part class "properly confin[ed]" to class members "who may possess an injury . . . obviating [the] problem of overbreadth." Pls. Mot. at 15. Plaintiffs contend they have styled the class definition after cases this court cited approvingly in its prior opinion. *See Duffin*, 2007 WL 845336, at *4 (citing *Mejdreck*, 2002 WL 1838141, at *2; *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Lit.*, MDL 1358(SAS), 2007 WL 541954, at *1 (S.D.N.Y. Feb. 20, 2007)).

A motion to reconsider is not the proper place to propose a new class or argue its merits. *Jolly Group*, 2004 WL 1276722, at *3. Plaintiffs do not attach a draft of a new motion for class certification. *See Harris v. City of Auburn*, 27 F.3d 1284, 1287 (7th Cir. 1994) (failure to tender a pleading with a motion to alter judgment indicates a lack of diligence and good faith). Without a draft, the court has insufficient information to determine whether the motion should be granted. *Id.* Accordingly, plaintiffs' alternative motion for leave to file an amended class certification motion must be denied.

## CONCLUSION

Plaintiffs' motion for reconsideration of the denial of class certification and leave to file a new motion for class certification is denied

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

May 4, 2007